IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DARRELL C. THOMPSON,              )
                                  )
                Plaintiff,        )
                                  )
        v.                        )    1:09CV278
                                  )
CAROLYN W. COLVIN,[1]             )
Commissioner of Social Security,  )
                                  )
                Defendant.        )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiff Darrell Thompson brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)) (the "Act"), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review. For the reasons set forth below, the Commissioner's motion will be granted, Thompson's motion will be denied, and this case will be dismissed.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   PROCEDURAL HISTORY

Thompson protectively filed his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on January 5, 2004, alleging a disability onset date of September 28, 2000. (Tr. at 112-15, 461-63.)[2]   His applications were denied initially (id. at 88-92) and upon reconsideration (id. at 82-84).   Thereafter, Thompson requested an administrative hearing (id. at 78), which was held on May 2, 2005, before Administrative Law Judge ("ALJ") Philip E. Wright (id. at 41).   Although ALJ Wright issued a decision concluding that Thompson was not disabled within the meaning of the Act (id. at 47), the Appeals Council later granted Thompson's request for review of that decision and vacated and remanded the case for a new hearing (id. at 30-31).   Specifically, the Appeals Council determined that (1) "[t]he hearing decision [did] not contain an adequate evaluation of the treating source opinion from Dr. Rowan," and (2) "[t]he hearing recording, with vocational expert testimony, [could not] be located; therefore, the record [was] incomplete." (Id. at 30.)   Notably, the remand order from the Appeals Council instructed the ALJ to "[g]ive further consideration to the treating source opinion pursuant to

---

[2]   Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer (Doc. 12).

the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings [("SSRs")] 96-2p and 96-5p and [SSR] 96-6p, and explain the weight given to such opinion evidence." (Id.) The order also directed the ALJ to "[o]btain evidence from a vocational expert [("VE")] to clarify the effect of the assessed limitations on the claimant's occupational base." (Id. at 31.)

On February 15, 2007, ALJ Maurice W. Horne held a second hearing, which Thompson attended with his attorney. (Id. at 13, 468-85.) A VE also attended but did not testify. (Id. at 13.) ALJ Horne ultimately determined that Thompson was not disabled (id. at 20), and on February 12, 2009, the Appeals Council denied Thompson's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (id. at 5-7).

In rendering his disability determination, ALJ Horne made the following findings later adopted by the Commissioner:

1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through March 31, 2005.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.    The claimant's degenerative disc disease is a "severe" impairment, based upon the requirements

in the Regulations (20 CFR §§ 404.1520 and 416.920).

4.  This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
    . . . .

11.  The claimant has the residual functional capacity to perform the full range of light work (20 CFR §§ 404.1567 and 416.967).

(Id. at 19-20.)

Based on Thompson's age, education, work experience, and residual functional capacity ("RFC"), ALJ Horne determined that the Social Security Administration's medical-vocational guidelines (the "grids"), contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, directed a finding of "not disabled." (Id. at 20.) He therefore concluded that Thompson was not under a "disability," as defined in the Act, from his alleged onset date through the date of the decision. (Id.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo."

Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted) (setting out the standards for judicial review).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).

"Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner or the] ALJ." <u>Hancock</u>, 667 F.3d at 472 (internal brackets and quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" <u>Id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [his] past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a

the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

"evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.

## III. ANALYSIS

In the present case, ALJ Horne (hereinafter "the ALJ") found that Thompson had not engaged in "substantial gainful activity" since his alleged onset date. Thompson therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Thompson suffered from a single severe impairment, degenerative disc disease. (Tr. at 19.) The ALJ found at step three that this impairment did not meet or equal a disability listing. Therefore, the ALJ assessed Thompson's RFC and determined that he could perform the full range of light work. (<u>Id.</u> at 20.) Based on this determination, the ALJ found under step four of the analysis that Thompson could not return to his past relevant work. However, he concluded at step five, that, given Thompson's age, education, work experience, and RFC, Thompson could perform other jobs available in the community and was therefore not disabled. (<u>Id.</u>)

Thompson argues that the ALJ erred by failing to comply with the Appeals Council's Order in two respects. First, he contends that the ALJ erred by seeking no testimony or other

evidence from the VE at Thompson's second hearing, as ordered by the Council, but instead applying the grids to obtain a finding of "not disabled." Second, Thompson contends that the ALJ failed to evaluate the treating source opinion of Dr. Rowan in accordance with the provisions set out in the Order. Finally, in an assignment of error unrelated to the Appeals Council Order, Thompson claims that substantial evidence fails to support the ALJ's RFC assessment. (Doc. 16 at 4.)

Defendant challenges Thompson's claims on two fronts. First, she contends that this court lacks jurisdiction to review the ALJ's compliance with the Appeals Council's Remand Order. (Doc. 19 at 5-7.) Additionally and alternatively, she urges that substantial evidence supports the determination that Thompson was not disabled. (Id. at 14.)

## A. Jurisdiction

As a threshold matter, Thompson argues that the failure of an ALJ to follow a remand order issued by the Appeals Council provides an independent basis for reversal and remand. Although some courts have held that the failure of an ALJ to comply with such an order "constitutes legal error and necessitates remand," see, e.g., Scott v. Barnhart, 592 F. Supp. 2d 360, 371-72 (W.D.N.Y. 2009); Salvati v. Astrue, No. 3:08-CV-494, 2010 WL 546490, at *7 (E.D. Tenn. Feb. 10, 2010) (unpublished), myriad

others, including this court, have instead concluded that a remand order constitutes an intermediate agency action and not the final decision of the Commissioner, Bass v. Astrue, No. 1:06CV591, 2008 WL 3413299, at *4 (M.D.N.C. Aug. 8, 2008) (unpublished); Peckham v. Astrue, 780 F. Supp. 2d 1195, 1203 (D. Kan. 2011); Brown v. Comm'r of Soc. Sec., No. 1:08CV183, 2009 WL 465708, at *5 (W.D. Mich. Feb. 24, 2009) (unpublished). Because "[t]he [c]ourt does not review internal, agency-level proceedings," it lacks the jurisdiction to "address whether the ALJ complied with specific provisions of the Appeals Council's remand order." Bass, 2008 WL 3413299, at *4.[5] Rather, "the scope of . . . review is limited solely to whether the Commissioner has applied the correct legal standards and whether his findings are supported by substantial evidence." Id. (citing Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)). Accordingly, in the present case, the court "will not address whether the ALJ complied with specific provisions of the Appeals Council's remand order," id., although reference to such provisions may be necessary to recount the substance of Thompson's claims.

---

[5] The Bass decision also noted that "the Appeals Council, by determining that there was no basis for review of the ALJ's . . . decision, implicitly found that the ALJ complied with its remand order." Id., 2008 WL 3413299, at *4 n. 2.

**B.    Treating Physician Opinion**

Turning to the substantive issues, Thompson first challenges the ALJ's treatment of Dr. Frank Rowan's medical opinion. The Appeals Council's remand order held that, in the decision from Thompson's first hearing, ALJ Wright failed to adequately evaluate the treating source opinion of Dr. Rowan, who, in fact, offered several differing opinions regarding Thompson's RFC. (<u>See</u> Tr. at 30, 444-51.) Specifically, the Appeals Council noted that "the decision [d]id not discuss Dr. Rowan's opinion that [Thompson] is limited to sedentary work activity." (<u>Id.</u> at 30.) Thompson now argues that, while the ALJ recites all of Dr. Rowan's opinions in the second hearing decision, he "does not explain the weight given to the different opinion evidence" or "indicate why he chose to discount Dr. Rowan's restriction of sedentary work with additional restrictions." (Doc. 16 at 8.)

To the extent that Thompson relies on non-compliance with the Appeals Council's order as an independent basis for remand, his argument fails for the reasons set out above. The court instead focuses on whether the ALJ applied the correct legal standards and supported his findings with substantial evidence. Thompson's contentions particularly dispute the ALJ's application of 20 C.F.R. §§ 404.1527(c) and 416.927(c), better

known as the "treating physician rule." The treating physician rule generally requires an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). The rule also recognizes, however, that the nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords it. 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). As subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590; accord Mastro, 270 F.3d at 178.

Where an ALJ declines to assign controlling weight to a medical opinion, he must "'explain in the decision the weight given' thereto and 'give good reasons in [his] . . . decision for the weight.'" Chirico v. Astrue, No. 3:10CV689, 2011 WL 6371315, at *5 (E.D. Va. Nov. 21, 2011) (unpublished)(emphasis deleted) (quoting 20 C.F.R. §§ 404.1527(e)(2)(ii), 404.1527(c)(2)). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thomas v. Comm'r of Soc. Sec., No. Civ. WDQ-10-3070, 2012 WL 670522, at *7 (D. Md. Feb. 27, 2012) (unpublished) (quoting Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011)). Such an explanation need not be explicit. "Implicit assignments of weight can support meaningful review" so long as the ALJ's opinion "make[s] clear that [he] 'recognized and evaluated the treating relationships' of medical sources." Thomas, 2012 WL 670522, at *7 (quoting Blakely, 581 F.3d at 409).

In the present case, the ALJ clearly considered Dr. Rowan's April 16, 2002 opinion that Thompson "was limited to sedentary work with no squatting, stooping, or lifting more than five pounds" and recounted these restrictions in his decision. (Tr. at 17.) However, the ALJ also noted that Dr. Rowan "offered several opinions" regarding Thompson's RFC between November 2001

and March 2003.  (Id. at 18, 444-51.)  These opinions furnished wildly differing accounts of Thompson's abilities. Significantly, on January 7, 2003, Dr. Rowan cited the need to reevaluate Thompson's limitation to sedentary work in light of a completely normal EMG study and an August 2002 functional capacity evaluation ("FCE") indicating his ability to perform heavy work.  (Id. at 447-48.)  Accordingly, Thompson underwent a second FCE, which demonstrated his ability to lift 50 pounds occasionally and 25 pounds frequently, equivalent to medium work.  (Id. at 445); see also 20 C.F.R. §§ 404.1567(c), 416.967(c).  Dr. Rowan remarked that the latter test was "definitely a valid functional capacity evaluation," and thereby adopted the results as his updated opinion of Thompson's work capacity.  (Tr. at 445.)

Although the ALJ's decision never explicitly stated that Dr. Rowan's 2003 opinion superseded his earlier views regarding Thompson's ability to perform only sedentary work or that the ALJ discounted the earlier opinion as a result, these findings are sufficiently implicit in the decision so as to provide meaningful judicial review.  The ALJ specifically (1) noted that the remand order required him to give additional consideration to Dr. Rowan's April 2002 opinion, (2) remarked on the existence of several differing opinions from Dr. Rowan regarding

15

Thompson's exertional abilities, and (3) included the dates and substance of these opinions in the body of the decision. (Id. at 17-18.) Therefore, the ALJ gave "good reason" for rejecting Dr. Rowan's April 2002 opinion by highlighting its inconsistency with his own, most recent opinion. Thompson's challenge on this point warrants no relief.

As a final matter, the court notes that the ALJ's decision incorrectly attributed a medical opinion dated June 21, 2004, to Dr. Rowan. (Id. at 18.) The treatment note from that date, suggesting limitations consistent with light work, is instead signed by Dr. Vincent Paul, another physician within the same medical practice as Dr. Rowan. (Id. at 442-43.) This error does not impact Thompson's argument, however, as the most recent opinion offered by Dr. Rowan suggests an RFC greater than that in Dr. Paul's evaluation, and, more importantly, greater than that ultimately adopted by the ALJ. Thus, the fact that the ALJ incorporated the exertional capabilities determined by Dr. Paul, rather than Dr. Rowan, constitutes harmless error.

### C.    RFC Assessment

Thompson next argues that, in determining that he retained the RFC to perform the full range of light work, the ALJ "appears to have given no consideration to the specific activities that Thompson's [d]octors have limited him from doing

that are inconsistent with light work, for example, squatting or stooping as opined by Dr. Rowan." (Doc. 16 at 8-9 (citing Tr. at 449).) Thompson also contends that the ALJ gave "no consideration . . . to the restrictions that Thompson testified about himself, for example[,] the inability to stand or walk for more than 15 minutes without sitting down due to pain." (Id. at 9 (citing Tr. at 479-80).)

As set out above, RFC measures the most a claimant can still do despite his physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a)(1). An ALJ determines a claimant's RFC only after he considers all relevant evidence of a claimant's impairments, such as his ability to sit-stand, push-pull, lift weight, walk, etc., as well as any related symptoms, including pain. Hines, 453 F.3d at 562-63; 20 C.F.R. 404.1529(a). The regulations, namely 20 C.F.R. §§ 404.1567 and 416.967, then translate the claimant's exertional abilities into an ability to perform a given level of work (i.e., sedentary, light, medium, heavy, or very heavy). Any nonexertional limitations, which encompass restrictions other than strength demands, may further restrict a claimant's ability to perform jobs within one of these exertional levels. See 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making his RFC determination. See, e.g., Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz v. Chater, 55 F.3d 300, 307–08 (7th Cir. 1995). However, "he must build an accurate and logical bridge from the evidence to his conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). Here, the ALJ determined that Thompson could perform the full range of light work. A review of both the decision and the record clearly demonstrates that the ALJ not only supported his RFC finding with substantial evidence but also built "an accurate and logical bridge" connecting the two.

First, as set out in the preceding subsection, the ALJ properly discounted Dr. Rowan's opinion that Thompson could perform only sedentary work with further limitations as to sitting and squatting. Dr. Rowan's most recent opinion instead limited Thompson to medium work with no further postural restrictions. (Tr. at 445.) In addition, the ALJ found Thompson's self-reports of pain and related restrictions "only partially credible" in light of their inconsistency with other evidence, including Thompson's FCEs, neurological findings, and his avoidance of prescription pain medications and surgery likely to reduce his symptoms. (Id. at 17–18.) Significantly, Thompson makes no challenge to the ALJ's credibility findings.

Instead, he argues that "[t]he medical evidence, combined with the multiple treating source opinions of [his] doctors, fails to show substantial evidence to support an RFC of light work without any further restrictions." (Doc. 16 at 9.)

Thompson is mistaken. The ALJ considered all medical opinions and evaluations related to Thompson's abilities, including those of Dr. Alan Tamazon, who concurred with the August 2002 FCE that Thompson could perform heavy work (Tr. at 17, 362-67, 398), Dr. Rowan, who concurred with the February 2003 FCE that Thompson could perform medium work (id. at 17-18, 403-13, 445), and Dr. Paul, Dr. Charles Nance, and two state agency physicians, all of whom opined that Thompson could perform light work (id. at 15-18, 303, 305, 307, 339-40, 443, 452A-59).[6] He also considered the March 10, 2004 opinion from a consultative examiner who opined that Thompson "would improve with conservative therapy but that without a lumbar fusion, it was likely that [Thompson] would be limited to sedentary work in the future." (Id. at 17.) After discussing the above evidence

---

[6] As Defendant admits, the state agency physicians opined that Thompson could perform light work with only occasional stooping and crouching. (Doc. 19 at 11 (citing Tr. at 455, 459).) However, Defendant also correctly notes that these further postural limitations "do not affect the occupational base for light work. Light work does not require crouching and requires no more than occasional stooping." (Id. at 11 n.3 (citing SSR 85-15).) In short, the ALJ did not err by failing to include these limitations in Thompson's RFC.

in his decision, as well as discounting Thompson's testimony as to his limitations, the ALJ stated that his opinion regarding Thompson's RFC was "consistent with those of the State agency reviewing physicians." (Id. at 18.) Thompson makes no tenable argument discrediting this conclusion, and the record itself provides none. Substantial evidence therefore supports the ALJ's RFC determination.

### D. Application of the Grids

Finally, Thompson challenges the ALJ's failure to elicit VE testimony to clarify the effects of his limitations on his occupational base. Because the Appeals Council specifically called for such testimony in its remand order, Thompson claims that the ALJ reversibly erred by failing to question the VE about this matter or, in fact, call her to testify at all. Instead, the ALJ applied the grids to determine that Thompson was not disabled.

At step five of the SEP, the government must prove in one of two ways that a claimant remains able to perform other jobs available in the community. Where a plaintiff suffers from purely exertional limitations,[7] the ALJ may apply the grids,

---

[7] Exertional limitations "affect only [a claimant's] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. §§ 404.1569a(b); 416.969a(b).

contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, to establish that claimant's vocational ability. See McLain v. Schweiker, 715 F.2d 866, 870 n.1 (4th Cir. 1983). If a plaintiff can perform the full range of work within one of the exertional categories defined by 20 C.F.R. §§ 404.1567 and 416.967, i.e., sedentary, light, medium, heavy, or very heavy, the Fourth Circuit has held that the grids adequately encompass the plaintiff's ability to perform basic work activities.  See Hammond v. Heckler, 765 F.2d 424, 425-26 (4th Cir. 1985).  If, however, the claimant suffers from non-exertional limitations,[8] the grids are not determinative, and the ALJ must consider vocational expert testimony.  McLain, 715 F.2d at 870 n.1.

Here, as discussed in subsection C above, the ALJ properly determined that Thompson could perform the full range of light work.  Consequently, the ALJ was not required to consult a VE in making his disability determination.  Further, for the reasons discussed in subsection A, the ALJ's failure to comply with the Appeals Council's order requiring VE testimony provides no independent basis for reversal in this case.  As Defendant correctly recounts, the ALJ secured the presence of a VE at the second hearing specifically to comply with the remand order.

---

[8] Non-exertional limitations affect a claimant's ability to meet the other demands of job and include mental limitations, pain limitations, and physical limitations not included in the seven strength demands.

(Doc. 19 at 14 n.4 (citing Tr. at 470).) However, "[t]he ALJ reasonably decided not to elicit testimony from the VE when, after hearing [Thompson]'s testimony, he determined that [Thompson] had no non-exertional issues that would require VE testimony." (Id. (citing Tr. at 484-85).) Substantial evidence thus supports the ALJ's decision at step five.

## III. CONCLUSION

For the reasons set forth above,

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, Thompson's motion for judgment on the pleadings (Doc. 15) is DENIED, Defendant's motion for judgment on the pleadings (Doc. 18) is GRANTED, and this action is DISMISSED WITH PREJUDICE.


                                     /s/   Thomas D. Schroeder
                                  United States District Judge

January 15, 2014